No. 13,325.

COX ET AL. *v.* OLSEN ET AL.
(41 P. [2d] 296)

Decided February 4, 1935.

Mr. John L. Noonan, Mr. W. F. Noonan, for plaintiffs in error.

No appearance for defendants in error.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

Plaintiffs in error were defendants in the trial court and reference will be made to the parties herein as they were there aligned. Permanent injunction was decreed against defendants to which they assign error and apply for supersedeas. Plaintiffs have made no appearance in this court. Assignment of the case was made to the writer of this opinion November 23, 1934.

The action involves the control of water decreed to, and conveyed by, the Eby-Sullivan ditch located in Garfield county, Colorado, originally constructed in 1882 across public and private lands. Both parties own land under the ditch, its extensions and enlargements, and as disclosed by the pleadings, the evidence and the decree, own approximately one-eighth of the water decreed to said ditch. The undisputed evidence shows that the defendants have beneficially used the undecreed flood waters turned into this ditch for a period of over 30 years. It further discloses that the Hughes estate, not a party to this action, also with lands under the ditch, is the owner of approximately seven-eighths of the water rights decreed to its predecessors, and was such long prior to the time that either of the parties hereto became the owners of their lands and rights.

The ditch in question traverses the land of one Sigurd Olsen—not a party to this action, but a son of Marie and brother to Linda Olsen, plaintiffs—for a distance of approximately 75 feet and then intersects with a lateral from the Hughes-Garden ditch, a junior ditch; it then traverses Olsen's land a further distance of approximately 200 feet and emerges upon the lands of the defendants. Plaintiffs' lands, comprising about 1.49 acres, lie beyond and below the lands of the defendants. The evidence further shows that Sigurd Olsen acted in the capacity of agent for plaintiffs, looking after their water interests especially in attempting to see that they obtained their share of the decreed water from the Eby-Sullivan ditch.

Claiming that during the two or three preceding irrigation seasons, they had been deprived of their share of the water and that defendants had, by improper methods, obtained and used the water properly belonging to them, plaintiffs filed this action in August, 1930, praying for damages and injunctive relief. Temporary injunction was issued and after the filing of a supplemental complaint and answer, after about two years during which the action was pending, upon a full hearing, the court issued a permanent injunction against the defendants. The pleadings and evidence are voluminous, and to make a brief, but clear and accurate statement thereof, would be most difficult as well as serving no useful purpose for a decision herein; we will therefore confine ourselves principally to a discussion of errors assigned to the decree entered by the court.

It seems from the evidence that the difficulty between the parties concerns the use, operation and control of that part of the Eby-Sullivan ditch which traverses the lands of Sigurd Olsen, not a party to the action, but who seems to have been acting for the plaintiffs, his mother and sister, whose lands are served by said ditch and which are below the lands of defendants. The difficulty started, it is claimed by defendants, when A. M. Cox met inter-

ference from Sigurd Olsen, in going upon that part of the ditch across the Olsen lands. It was necessary for the court first to make a definite finding as to the rights of the parties before it could grant an injunction. This was done so far as their decreed rights were concerned and we find this nugatory peculiarity of the decree, as it affects the interests of those not herein made a party to this action. The court found that the carrying capacity of the Eby-Sullivan ditch is approximately two cubic feet of water per second of time, of which amount .268 of a cubic foot is owned by plaintiffs and defendants. The balance of 1.73 cubic feet per second of time, according to the evidence, belongs to the estate of Charles G. Hughes, deceased. The decree provides that the parties hereto install, at their expense, a substantial and permanent headgate and dam across Three Mile Creek; that same shall be regulated by the water commissioner or his deputy; that the parties hereto shall each year clean, repair and maintain, each one-half of the Eby-Sullivan ditch enlargement and extension; and that any repairs that shall become necessary to the dam, headgate or through its entire length, shall be paid one-half each by the parties hereto. Objection was made by defendants during the course of the trial to the lack of necessary parties. They did not make such objection directly in their pleadings, but it seems to appear from the face of the pleadings. That burden was upon the plaintiffs herein.

It appears from the pleadings and the evidence that the Hughes estate is a necessary and indispensable party, since it has decreed rights to approximately seven-eighths of the carrying capacity of said ditch. As the decree stands, the burden of maintenance and repair falls solely upon the owners of only approximately one-eighth of the ditch capacity, and the Hughes estate is barred from any regulation in connection with the headgate, such regulation being given over to the water commissioner with directions concerning only the interests of plaintiffs

and defendants. Certainly under the earlier appropriations, decrees which could not be changed or readjudicated as to the volume of water and capacity of the ditch in this proceeding, the Hughes estate, not a party hereto, could change the headgate for which provision is made in the decree, thereby affecting the rights of plaintiffs and defendants over their objections, and further, the court, without jurisdiction, placed the interests of the Hughes estate under the control of plaintiffs and defendants so far as the cleaning, repairing and maintenance of the ditch is concerned, and by a further improvident provision of the decree, the Hughes estate, owners of seven-eighths of the decreed water, wholly escape any expense in connection with the ditch, the entire burden being placed upon defendants, the owners of approximately one-eighth. The defendants claim, and such finds support in the evidence, that their rights are derived from the Hughes estate and its predecessors in interest, based upon parol permission to use the entire ditch, which use has extended over a period of 30 years, and upon an administrator's deed offered and admitted in evidence.

"The general rule in equity requires that the persons interested in the subject of the action should be made parties, etc.; not only all persons whose rights may be affected by the judgment should be brought into court, but all those whose presence is essential to the protection of any party to the action, * * *." *Rumsey v. New York Co.*, 59 Colo. 71, 147 Pac. 337.

██ The evidence discloses the defendants as having certain formerly determined rights in the Eby-Sullivan ditch, and to deprive them from going upon the land occupied by said ditch where it passes through the grounds of Sigurd Olsen, not a party to this suit, deprives them of a property right. Apparently the court acted in good faith in making its orders and with the idea of preventing further breaches of the peace between the defendants and Sigurd Olsen. There is nothing in the testimony to show any difficulty between the plaintiffs and either of the de-

fendants. There was no showing of substantial damage to Sigurd Olsen, occasioned, or that would be occasioned, by the defendants being allowed to go upon that portion of the ditch passing through his lands for the purpose of cleaning, repairing or maintaining the same and for the regulation of the water therein. From the testimony, it appears that Hughes, during his lifetime, consented to the use of the ditch by defendants over a period of years; that he and the representatives of his estate had knowledge of the use and maintenance thereof after defendants acquired title through Hughes and the Hughes estate which conveyance was silent as to the use of the ditch, and the rights of defendants as licensees as to the estate, were thereby established.

█ The flood water from Three Mile Creek is apparently the most important element involved in the entire case, and as to this water, the rights of the respective parties hereto were not in issue and had not been previously determined, thereby leaving a further uncertainty in this decree as it affected such rights.

██ The statutory duty of a water commissioner is set out in section 1922, Compiled Laws of 1921, and is as follows: "It shall be the duty of said water commissioners to divide the water in the natural stream or streams of their district among the several ditches taking water from the same, according to the prior rights of each respectively; in whole or in part to shut and fasten, or cause to be shut and fastened, by order given to any sworn assistant, sheriff, or constable of the county in which the head of such ditch is situated, the head-gates of any ditch or ditches heading in any of the natural streams of the district, which, in a time of a scarcity of water, shall not be entitled to water by reason of the priority of the rights of others below them on the same stream."

This statute does not confer upon a water commissioner any authority to go below the headgate of a ditch and attempt to apportion the waters flowing therein between the parties lawfully entitled thereto. After dividing the

water from the natural stream and turning same into the several ditches, acording to their priorities, and regulating same thereafter in times of scarcity, according to priorities, the authority of the water commissioner ceases. Authority to determine and divide water, after it leaves the headgate, between users thereof, cannot be conferred upon him by a judicial decree, and in this particular case, discussion is unnecessary to determine that the commissioner cannot divide undecreed and unappropriated flood waters between the parties hereto. Section 1927, Compiled Laws of 1921, authorizes water commissioners to go upon such ditches below the headgates, only to determine whether or not waste is being committed, and under that statute, if it is found by the commissioner that waste is being committed, his full and only authority to act is to be found in the section above cited, namely, to shut off the supply at the headgate, of such water as in his judgment was wasted and unused.

Other questions are raised that we find it unnecessary to discuss. The judgment is reversed and the cause remanded with instructions to meet the lack of necessary parties and proceed in harmony herewith.

Mr. Justice Bouck not participating.